UNITED STATES DISTRICT COURT
NORGHERN DISTRICT OF OHIO
-------------------------------------------------------
:
CURTIS BANKS, :
: CASE NO. 1:11-CV-1267
Plaintiff, :
:
vs. : OPINION & ORDER
: [Resolving Doc. No. 6]
REMINGTON COLLEGE – BCL, INC., :
:
Defendant. :
:
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Remington College – BCL, Inc. ("Remington"), the Defendant in this employment discrimination case, has moved to compel arbitration of its former employee's claims of racial discrimination. [Doc. 6.] Curtis Banks, the Plaintiff and former employee, opposes Remington's motion. Because the Court concludes that Banks has agreed to arbitrate the claims he makes in this lawsuit, and because that agreement is enforceable, the Court grants Remington's motion.

I.

On this much the parties agree: In June 2009, Banks applied for a job with Remington. As part of that application process, Remington required Banks to complete and sign a two-page-long employment application. The second page of that application contains nine paragraphs of conditions, two of which are relevant here. The first, paragraph seven, reads in part:

-1-

Case No. 1:11-CV-1267
Gwin, J.

> I further recognize that if employed by the Company, I agree, in partial consideration of my employment, to file a demand for arbitration to resolve any disputes arising from my employment, as required under Paragraph 8 below.

[Doc. 6-3.]

Paragraph eight (the only paragraph printed entirely in capital letters) follows:

> Any statutory or non-statutory claims arising out of or in connection with any aspect of my employment or any termination thereof (including by way of example . . . , disputes concerning alleged civil rights violations, employment discrimination of any kind including on the basis of any protected category under federal or state law . . . ), shall be exclusively subject to binding arbitration under the National Rules for the Resolution of Employment Disputes of the American Arbitration Association . . . . I understand that my agreement herein constitutes a waiver of my right to adjudicate claims against the company in court, and that I am opting instead to arbitrate any such claims.

*Id.* (emphasis omitted). Banks signed and dated the back of the application, just below the end of paragraph eight.

Remington hired Banks, but later fired him. Banks then filed this lawsuit, claiming racial discrimination in violation of federal and state law. *See* [Doc. 1.] Remington now seeks to enforce the arbitration provision contained in Banks's employment application.[1]

II.

"Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). There is no dispute

---

[1] Remington's employee handbook, which Remington provided to Banks on his first day of orientation, *see* [Doc. 13-1], also explained Remington's alternative dispute resolution procedures, *see* [Doc. 6-4.]

Case No. 1:11-CV-1267
Gwin, J.

that Banks's claims "fall[] within the substantive scope of" paragraphs seven and eight. That is, each claim "aris[es] out of or [is] in connection with an[] aspect of [Banks's] employment or [the] termination thereof." *See* [Doc. 6-3.] Accordingly, if those paragraphs are enforceable, Banks must submit his claims to arbitration.

Whether those paragraphs are enforceable, however, is a separate question. "Because arbitration agreements are fundamentally contracts, we review the enforceability of an arbitration agreement according to the applicable state law of contract formation," *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007)—in this case, Ohio law.[2]

Under Ohio law, "[t]he elements of a contract include the following: an offer, an acceptance, . . . consideration . . . , [and] a manifestation of mutual assent." *Lake Land Emp't Grp. of Akron, LLC v. Columber*, 804 N.E.2d 27, 31 (Ohio 2004). Banks's signed employment application provided "that if [Banks was] employed by the Company, [he] agree[d], in partial consideration of [his] employment," to arbitrate any disputes arising from that employment. [Doc. 6-3.] That application was Banks's offer to Remington, which Remington accepted when it hired him. Furthermore, that application—designed by Remington and signed by Banks—was an objective manifestation of Remington's and Banks's mutual assent to the conditions of employment listed in the application, including the arbitration provision. Finally, notwithstanding Banks's argument to the contrary, Remington's employment of Banks was sufficient consideration for Banks's promise to arbitrate any employment disputes. *See Dantz v. Am. Apple Grp., LLC*, 123 Fed. App'x. 702, 709 (6th Cir. 2005)

---

[2] This is true so long as the relevant state law does not "prohibit[] outright the arbitration of a particular type of claim" or "disfavor[] arbitration." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1747 (2011). Because the Ohio legal rules at issue here are nothing more than the generally applicable doctrines of contract formation and unconscionability and do not disfavor arbitration, the Court will apply them.

Case No. 1:11-CV-1267
Gwin, J.

(citing *Lake Land Emp't Grp. of Akron, LLC*, 804 N.E.2d at 31-32).[3/] Accordingly, Banks and Remington formed a valid contract.

To this Banks offers two responses, neither persuasive. First, he says, the contract is unenforceable because it is unconscionable. "Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Lake Ridge Acad. v. Carney*, 613 N.E.2d 183, 189 (Ohio 1993) (quoting *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965)). Put another way, unconscionability "embodies two separate concepts: (1) unfair and unreasonable contract terms, i.e., substantive unconscionability; and (2) individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible, i.e., procedural unconscionability." *Wallace v. Ganley Auto Grp.*, No. 95081, 2011 WL 2434093, at *4 (Ohio Ct. App. June 16, 2011). "The party asserting unconscionability of a contract must prove both substantive and procedural unconscionability." *Id.*

Banks's claim of unconscionability fails at its first step. There is nothing "outrageous," as Banks puts it, about this arbitration agreement. It provides for

---

[3/] Although Banks acknowledges the existence of his employment application, he makes little effort to explain why the arbitration agreement memorialized in that document is invalid. Rather, he devotes most of his opposition to explaining why another form he signed—the employee acknowledgment form—does not require him to arbitrate. Banks signed this acknowledgment form on his first day of orientation, after Remington had provided him with a copy of the employee handbook. The handbook contained information on Remington's alternative dispute resolution procedures and Banks's signature on the acknowledgment form indicates that he read, understood, and agreed to be bound by those procedures.

Banks complains that the acknowledgment form provides Remington with a "one-sided Remington-only escape hatch," because "the information, policies, and benefits described in the Handbook are subject to change," and that "[o]nly the President of the Company has the ability to adopt any revisions to the policies in the Handbook." [Doc. 6-5.] Accordingly, Banks says, his promise on the acknowledgment form to arbitrate employment disputes was not supported by consideration. *See Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315-16 (6th Cir. 2000). Whatever might be said of this argument, it ignores Banks's earlier offer to arbitrate (in his employment application) in which Banks promised to arbitrate in partial exchange for his employment. That agreement did not have a similar "escape hatch" and was supported by consideration.

-4-

Case No. 1:11-CV-1267
Gwin, J.

> binding arbitration under the National Rules for the Resolution of Employment Disputes of the American Arbitration Association[,] . . . all substantive rights and remedies including any applicable damages provides under pertinent statute(s) related to such claims, the right to representation by counsel, a neutral arbitrator, a reasonable opportunity for discovery, a fair arbitral hearing, a written arbitral award containing findings of fact and conclusions of law, and any other provisions required by law . . . .

[Doc. 6-3 (emphasis omitted).] Indeed, although Banks suggests that the arbitration provision is "so one-sided as to oppress or unfairly surprise" him, [Doc. 13], he fails to point to any specific deficiency in the arbitral process to which he agreed. Rather, he devotes his brief to arguing that the *employee handbook*, which describes Remington's alternative dispute resolution procedures, is "outrageous" because Remington has the sole ability to revise "the information, policies, and benefits described in" it. *See* [Doc. 13, at 9-10.] That misses the point. Whether or not the handbook constitutes a binding agreement to arbitrate, there is no doubt that the employment application, which has no language contemplating future revisions, constitutes such an agreement. And Banks has failed to demonstrate that the terms of that employment agreement are "unfair and unreasonable." *Wallace*, 2011 WL 2434093, at *4.

Banks's remaining argument—that he did not knowingly and voluntarily waive his right to a jury trial—also fails. "In evaluating whether a waiver has been knowingly and voluntarily executed, we look to (1) plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances." *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 668 (6th Cir. 2003) (en banc) (quoting *Adams v. Philip Morris, Inc.*, 67 F.3d 580, 583 (6th Cir. 1995)).

Case No. 1:11-CV-1267
Gwin, J.

Banks has no legal training, but he does hold a certificate in Pharmacy Technology from the U.S.A.F. School of Health Care Science and is pursuing an Associate's Degree in Science from Cuyahoga Community College. He presents no evidence of any difficulty reading or understanding the English language. Rather, he claims that he either "did not read in detail" or "did not read" the second page of the employment application because he "had no idea what the label at the top meant, and [] believed it was a standard employer form." [Doc. 13-1.][4/] There is no evidence that Remington hurried Banks to complete the employment application, nor is there any evidence that Remington denied Banks the opportunity to consult with a lawyer prior to signing the application. *See* [Doc. 13-1 ("I went to . . . Remington . . . and filled out an application for employment . . . .").]

Banks does allege that he "was not given a copy of the application to take with" him and that "[n]o one at Remington explained to [him] what [the second page] meant" or "what arbitration meant," but does not say that he ever asked for a copy of the application or asked Remington to explain to him the terms with which he was unfamiliar. *See id.* Rather, he signed the application. *See* [Doc. 6-3]; *accord Aracri v. Dillard's, Inc.*, No. 1:10cv253, 2011 WL 1388613 (S.D. Ohio Mar. 29, 2011) ("Aracri had an opportunity to consider the document before signing it."); *Moore v. Ferrellgas*, 533 F. Supp. 2d 740, 749 (W.D. Mich. 2008) ("Plaintiff did not request extra time to consider the Employee Agreement or to contact a lawyer. Moreover, Plaintiff did not indicate to Defendant he did not understand the arbitration agreement or any portion of the Employee Agreement."). And in exchange, Remington gave Banks "due consideration"—a job. *Ferrellgas*, 533 F. Supp. 2d at 749.

---

[4/]Banks does not explain what terms and conditions a "standard employer form" might contain. Suffice it to say, agreements to arbitrate may indeed be "standard." *See George Watts & Son, Inc. v. Tiffany & Co.*, 248 F.3d 577, 583 (7th Cir. 2001) ("As a final note, mandatory arbitration clauses are prevalent in a broad collection of contracts, forcing parties to accept the arbitral rather than judicial forum to adjudicate their rights.").

Case No. 1:11-CV-1267
Gwin, J.

As for the waiver itself, it was the only condition on the second page of the employment application printed entirely in capital letters, *see* [Doc. 6-3], and in its concluding sentence explained: "I understand that my agreement herein constitutes a waiver of my right to adjudicate claims against the company in court, and that I am opting instead to arbitrate any such claims," *id.* That sentence is so close to the signature line—where Banks's signed his name—that you can simultaneously cover parts of both with a quarter-dollar coin.

Considering the circumstances, the Court's finds that Banks's waiver was knowing and voluntary.

Accordingly, the Court **GRANTS** Remington's motion to compel arbitration and **DISMISSES** this case. See *Stachurski v. DirecTV, Inc.*, 642 F. Supp. 2d 758, 764 (N.D. Ohio 2009) ("If all the claims in the case are within the scope of the arbitration agreement, and there is nothing left for the district court to do but execute judgment, dismissal of the case is appropriate.").

IT IS SO ORDERED.


Dated: October 6, 2011                    *s/        James S. Gwin*
                                          JAMES S. GWIN
                                          UNITED STATES DISTRICT JUDGE